UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA


PAUL M. WARNER,                          )
                                         )
            *Plaintiff*,                 )
                                         )
v.                                       )        No. 1:04-CV-399
                                         )
MCMINN COUNTY, TN, et al.,               )        MAGISTRATE JUDGE LEE
                                         )
            *Defendants*.                )


## MEMORANDUM AND ORDER


### I.    Introduction

Before the Court is the joint motion for summary judgment filed by Defendants, McMinn County, Tennessee ("McMinn County"); Sheriff Steve Frisbee ("Frisbee"); Sergeant Greg Walker ("Walker"); Deputy Benji Jorgenson ("Jorgenson") and Deputy J. P. Allman ("Allman") [Doc. No. 43] and a brief in support thereof [Doc. No. 43-2].[1]  Plaintiff, Paul M. Warner, Jr., has filed a response in opposition to Defendants' motion for summary judgment [Doc. Nos. 47].

In addition, on September 13, 2007, the Court ordered the Defendants to file a supplement to their summary judgment motion addressing the impact of a recent decision of the Sixth Circuit, *Powers v. Hamilton County Public Defender Com'n*, ___ F.3d ___, 2007 WL 2428315 (6th Cir.

---

[1]  Contemporaneously with the filing of their joint motion, Defendants filed documents which purport to be joint motions for summary judgment [Doc. Nos. 41, 42], but appear to be duplicates of the Defendants' motion, memorandum and attachment.  The attachment initially filed by Defendants [Doc. No. 43-3] was unreadable and has been replaced [Doc. No. 44-2].

Aug. 29, 2007), on Defendants' argument that it should be granted summary judgment under the favorable-termination doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994) [Doc. No. 48]. In response, Defendants filed a motion to file their supplement late [Doc. No. 49] and a supplement [Doc. No. 50]. Plaintiff has filed a reply to Defendants' supplement [Doc. No. 55].

Consequently, the motions are now ripe for review. For the reasons set forth below, Defendants' motion to file their supplement late [Doc. No. 49] will be **GRANTED** and Defendants' motion for a summary judgment [Doc. No. 43] will be **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) that aspect of the Defendants' motion which seeks summary judgment on Plaintiff's § 1983 claims of unconstitutional seizure (false arrest) will be **GRANTED** and those claims will be **DISMISSED WITH PREJUDICE**;

(2) that aspect of Defendants' motion which seeks summary judgment on Plaintiff's § 1983 claims of excessive force will be **DENIED** and those claims will proceed to trial; and

(3) that aspect of Defendants' motion which seeks summary judgment on Plaintiff's claims against McMinn County and the individual Defendants in their official capacities, including the remaining claim against Frisbee, is **GRANTED** and those claims will be **DISMISSED WITH PREJUDICE**.

## II.     Procedural and Factual Background

### A.     Procedural History

Plaintiff brought this action against Defendants on December 30, 2004, pursuant to 42 U.S.C. § 1983 [Doc. No. 1-1, ¶ 1]. He asserts claims of excessive force and unlawful seizure in violation of his rights under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United

States as well as pendent state law claims of battery, false arrest, malicious prosecution, and unlawful seizure [*id.*, ¶ 20].

In his complaint, Plaintiff alleges he was making an emergency drive to aid his father, who had gone into a diabetic coma, on January 4, 2004 [*id.*, ¶ 9]. According to Plaintiff, while driving with his flasher lights blinking, he stopped for a red light at the intersection of Madison and south White Street in Athens, Tennessee, which is located in McMinn County [*id.*,¶¶ 9, 10].

Plaintiff alleges Walker, Jorgenson, and Allman of the McMinn County sheriff's department, turned a spotlight on Plaintiff's vehicle and approached it with their weapons drawn [*id.* at ¶¶ 10, 11]. Plaintiff alleges he tried to explain the nature of the emergency to Walker, Jorgenson, and Allman, but they continued to point their weapons at him, and Plaintiff exited his vehicle and placed his hands on top of the automobile [*id.*, ¶ 12]. Plaintiff alleges one of the three officers then began kicking his feet, jerked him around, and threw him to the pavement [*id.*, ¶ 13]. Next, Plaintiff alleges he was handcuffed while Walker and Jorgenson were on his back, placed in a headlock by Allman who began hitting him with his fists, and sprayed by Allman with a chemical weapon despite already being handcuffed [*id.*, ¶¶ 13-15]. Plaintiff claims that, as the result of the excessive force used by Allman, Jorgenson, and Walker during and subsequent to his arrest, he has "sustained severe, disabling and permanent injuries to wrists and face and has experienced humiliation, emotional distress, pain and suffering, has incurred substantial medical expenses, has lost income and will lose income in the future." [*Id.*, ¶ 16].

Plaintiff also alleges Allman, Jorgenson, and Walker were acting under color of state (Tennessee) law on behalf of Defendants Frisbee and McMinn County [*id.*, ¶ 17]. He further alleges the abuse he suffered was an institutionalized practice which was known to and ratified by Frisbee

and McMinn County [*id.*].  Plaintiff further alleges Frisbee and McMinn County had prior notice of the propensities of Allman, Jorgenson, and Walker and took no action to stop their abuses and failed to properly train Allman, Jorgenson, and Walker resulting in his injuries [*id.*, ¶¶ 18, 19]. Plaintiff seeks punitive damages, compensatory damages for the alleged violation of his civil rights, excessive force, harassment, lost income, permanent injuries, and emotional, and mental anguish, and attorney's fees.

On August 4, 2005, Frisbee filed a first motion for summary judgment [Doc. No. 23].  On November 10, 2005, the Court granted Frisbee's partial summary judgment and dismissed with prejudice: (1) Plaintiff's pendent state law claims of battery, false arrest, malicious prosecution and unlawful seizure against Frisbee; (2) Plaintiff's claims of excessive force and unconstitutional seizure against Frisbee under 42 U.S.C. § 1983 insofar as they are predicated upon a theory of *respondeat superior*; (3) Plaintiff's § 1983 claim that he suffered excessive force and an unconstitutional seizure as the result of the attempted arrest/arrest on January 4, 2004, because Frisbee had prior notice of the propensities of Walker, Jorgenson, and Allman and took no action to stop their abuses; and (4) Plaintiff's § 1983 claim that he suffered excessive force and an unconstitutional seizure as a result of the attempted arrest/arrest on January 4, 2004, because Frisbee failed to properly train Allman, Jorgenson, and Walker [Doc. No. 34 at 1].  Plaintiff's § 1983 claim that the alleged excessive force and unconstitutional seizure he suffered was the result of an institutionalized practice known to and ratified by Frisbee was not dismissed [*id.* at 1-2].

B.    Facts

Attached to Defendants' motion for summary judgment is a plea of no contest document entered by the Criminal Court of McMinn County that was executed by, among others, the Plaintiff

on December 4, 2006 [Doc. No. 44-2]. The parties are in agreement that Plaintiff entered a plea of no contest to charges of speeding, evading arrest, and resisting arrest arising out of the events of January 4, 2004 [Doc. No. 44-2].

Attached to Plaintiff's response to Defendants' summary judgment motion is the Plaintiff's affidavit, which states in pertinent part:

1. On January 4, 2004, I got a call from my sister saying my father was in a coma in Athens.
2. I got in my car and headed there.
3. I did not see any police until I was in Athens passing Temptations Restaurant when I first saw the blue lights.
4. I stopped at the red light and sat there one minute and nothing happened.
5. Two other police cars pulled up and I rolled down my window.
6. I had three (3) guns pulled on me.
7. I tried to explain what was going on with my father.
8. I was told to put my hands on my head and to get up against the car.
9. I got jerked about and thrown to the pavement by . . . Walker.
10. Immediately my left arm was jerked behind me and I was cuffed.
11. Allman jumped on me and got me in a head lock and started punching me in the face.
12. Both my hands were cuffed when I was sprayed by . . . Allman.
13. I received injuries to my head and face and hands.
14. At no time did I ever resist or attempt to resist the officers' commands.
15. I exited my vehicle and was attacked, assaulted and sprayed with chemicals after being handcuffed.

[Doc. No. 47-2 at 1-2].

Attached to Defendants' supplement to their motion for summary judgment is a June 4, 2006 order of judicial diversion issued in Plaintiff's criminal case in McMinn County [Doc. No. 51-3].

The order states Plaintiff is placed on judicial diversion for a period of four months pursuant to his

plea of *nolo contendere* [*id.*]. The order states in pertinent part:

> The defendant understands that he is to be placed on probation for this entire diversionary period and must abide by all rules of probation during this time . . . .

> The defendant further understands that any violation of his probation or the terms of his diversion agreement could result in the immediate revocation of his diversion, with permanent judgments of guilty being entered in this case . . . .

> The defendant further understands that it is his/her responsibility to take affirmative action at the successful conclusion of this diversion period to remove this case from his/her record.

[*Id.*].

Also attached to Defendants' supplement is a waiver of appeal which states that Plaintiff was

convicted of speeding, evading arrest and resisting arrest on June 4, 2006, and that Plaintiff:

> does not desire to appeal his/her case to the Criminal Appeals Courts of Tennessee. He/She states that this decision has been made by him/her voluntarily after a full and complete discussion of said conviction with his/her attorney.
> The defendant states he/she fully understands his/her rights to appeal his/her case that he, nevertheless, desires not to appeal. His/Her attorney agrees that the defendant has no basis for appeal as there are no errors in the record.

[Doc. No. 51-2].

### III.  Analysis

In their memorandum in support of their motion for summary judgment, Defendants state:

> [Plaintiff] has sued McMinn County, Sheriff Steve Frisbie, Sergeant Greg Walker, Deputies Benji Jorgenson and J.P. Allman, in their individual and official capacities, alleging that these defendants are "libel [sic] to [Plaintiff] for use of excessive force, and unlawful seizure in violation of his constitutional rights both federal and state in addition to the pendant state claims of battery, false arrest,

malicious prosecution, and unlawful seizure." (Complaint at paragraph 20) Sheriff Steve Frisbie has previously been dismissed from this matter.

With respect to the excessive force claim, the individual officers assert that they are entitled to summary judgment on any of three alternative grounds: (1) the *Heck* doctrine bars [Plaintiff] from pursuant an excessive force claim where he has already been found guilty of resisting arrest; or (2) issue preclusion bars [Plaintiff] from relitigating the facts that would support his excessive force claim; or (3) the individual defendants are entitled to qualified immunity. With respect to the false arrest claim, the individual defendants assert that they are entitled to qualified immunity.

With respect to the excessive force and false arrest claims against McMinn County, it is entitled to summary judgment on two alternative grounds: (1) there is no underlying constitutional violation; or (2) there is no evidence of a policy or custom of deliberate indifference regarding officer training.

[Doc. No. 43-2 at 1-2].

In his response to Defendants' motion, Plaintiff asserts Defendants are not entitled to summary judgment under the doctrine of qualified immunity because they drew their weapons and pointed them at Plaintiff for a minor traffic violation and then commenced to beat and abuse the Plaintiff after he was handcuffed [Doc. No. 47 at 3]. Plaintiff also asserts the *Heck* doctrine does not apply to this case because of Plaintiff's *nolo contendere* plea [*id.* at 4-5]. Plaintiff further asserts McMinn County is not entitled to summary judgment because his affidavit "shows a lack of training on the part of the officers and their supervisors and the readiness of the officers to engage in violent behavior toward the citizens and be backed up by fellow officers with no justifications and allowed to continue perpetrating as evidenced by Sergeant Walkers' failure to intervene or protect the Plaintiff, but even more egregious to participate and perpetuate the violence against Plaintiff." [*Id.* at 5].

## A.    Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  The court cannot weigh the evidence or determine the truth of any matter in dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute.  *Id.*  A mere scintilla of evidence is not enough.  *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party.  *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907.

## B.    Qualified Immunity

Defendants Allman, Jorgenson, and Walker assert they are entitled to qualified immunity as a matter of law on Plaintiff's § 1983 claims of excessive force and unconstitutional seizure [Doc. No. 43-2 at 6].  Plaintiff disputes this claim, relying principally on cases addressing the use of excessive force after a suspect is subdued [Doc. No. 47].

"Qualified immunity shields an officer from suit when []he makes a decision that, even if

constitutionally deficient, reasonably misapprehends the law governing the circumstances []he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "Because the focus is on whether the officer had fair notice that h[is] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.* The Supreme Court has emphasized "that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). *See also Lyons v. City of Xenia,* 417 F.3d 565, 571 ( 6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 201).

In evaluating the merits of Defendants' qualified immunity defense, this Court engages in a two-step analysis to determine: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and if so, (2) whether that right was clearly established." *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006) (citing *Saucier*, 533 U.S. at 201). When the defense of qualified immunity is raised, it is the plaintiff's burden to prove that the state officials are not entitled to qualified immunity. *Ciminillo*, 434 F.3d at 466 (citing *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000)).

### 1. Unconstitutional Seizure/Arrest

"The standards for qualified immunity in the context of arrests are well-defined. Qualified immunity shields police officers from a suit for damages if 'a reasonable officer could have believed [Plaintiffs' arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'" *McBride v. Maynard*, Nos. 97-6458, 98-5092, 1999 WL 16661, * 1 (6th Cir. Jan. 6, 1999) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "Immunity is afforded even if

law enforcement officials 'reasonably but mistakenly conclude that probable cause is present.'" *McBride*, 1999 WL 16661 at * 1 (quoting *Hunter,* 502 U.S. at 227). "[P]robable cause to arrest existed if 'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that a crime occurred.'" *Id.* (quoting *Hunter*, 502 U.S. at 228). For purposes of a qualified immunity analysis, the focus "is on the objective legal reasonableness of the official's actions in light of clearly established law." *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In *Walker v. Schaeffer*, 854 F.2d 138, 139 (6th Cir. 1988), the plaintiffs sued defendant-officers under § 1983 for, among other things, false arrest. The plaintiffs, who had been arrested for disorderly conduct and reckless driving, entered no contest pleas and were fined. *Id.* at 140. The Sixth Circuit found the plaintiffs' no contest pleas were "a sound basis for [the defendants'] claim of qualified immunity" as to the plaintiffs' § 1983 claims of false arrest. *Id.* at 143. The Sixth Circuit stated that it agreed with the conclusion reached in *Cameron v. Fogarty*, 806 F.2d 380, (2d Cir. 1986), *cert. denied*, 481 U.S. 1016 (1987):

> that the proper accommodation between the individual's interest in preventing unwarranted intrusions into his liberty and society's interest in encouraging the apprehension of criminals requires § 1983 doctrine be deemed, in the absence of any indication that Congress intended otherwise, to incorporate the common-law principle that, where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause.

*Walker*, 854 F.2d at 143 (quoting *Cameron*, 806 F.2d at 388-89).

In *Corvin v. Bice*, No. 1:05-cv-219, 2007 WL 776501 * 5 (E.D. Tenn. Mar. 9, 2007), the plaintiff pleaded guilty to misdemeanor charges, was granted judicial diversion, and then brought

a § 1983 claim for false arrest. In determining what preclusive effect should be given to the plaintiff's guilty plea and judicial diversion, this Court stated:

> it is clear that under Sixth Circuit precedent, plaintiffs who plead guilty and receive judicial diversion are precluded from pursuing a Fourth Amendment claim for unlawful arrest. *Wilson v. Johnson*, No. 3:04-CV-59, 2005 WL 2417057, * 9 (E.D. Tenn. September 30, 2005); *Walker*, 854 F.2d at 142-43 (holding nolo contendere pleas made by plaintiffs in state court criminal proceedings preclude them from asserting in federal court that the officers lacked probable cause to arrest them); *Cunningham v. Sisk*, No. 1:01-CV-182, 2003 WL 23471541, * 8 (E.D. Tenn. Dec. 4, 2003), *aff'd*, 2005 WL 1285649 (6th Cir. May 18, 2005) (holding that plaintiff's Fourth Amendment claim for false arrest brought pursuant to § 1983 was precluded by the state court criminal proceedings in which plaintiff plead guilty based upon the doctrine of defensive collateral estoppel). Even though Plaintiff "was given the opportunity to have his record expunged by the state trial judge, he still pled guilty" . . . and is therefore barred from repudiating his guilty plea and "relitigat[ing] the circumstances surrounding his arrest and the issue of probable cause." *Wilson*, 2005 WL 2417057 at * 9. "Plaintiff's guilty plea, even though it involved judicial diversion, still has the same effect and precludes plaintiff from pursuing a Fourth Amendment claim for unlawful arrest." *Id.* at * 9.

*Id.* Thus, Plaintiff's plea of *nolo contendere*, even though he was granted judicial diversion and was given the opportunity for expungement, is still entitled to preclusive effect. Plaintiff has provided the Court with no authority supporting a contrary result.

Accordingly, that aspect of Defendants' motion which seeks summary judgment on Plaintiff's § 1983 claims of unconstitutional seizure (false arrest) against Allman, Jorgenson, and Walker and those claims will be **DISMISSED WITH PREJUDICE**.

### 2. Excessive Force

In *Lyons*, the Sixth Circuit stated:

> As the *Brosseau* Court noted, *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), and *Graham v. Connor*, 490 U.S.

> 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), establish the governing
> constitutional rules regarding excessive force. In *Garner*, the Court
> held that the reasonableness of using deadly force to subdue a suspect
> hinges on whether the "officer has probable cause to believe that the
> suspect poses a threat of serious physical harm, either to the officer
> or to others." 471 U.S. at 11, 105 S.Ct. 1694. And *Graham* held that
> excessive-force claims generally "are properly analyzed under the
> Fourth Amendment's 'objective reasonableness' standard." 490 U.S.
> at 388, 109 S.Ct. 1865.

417 F.3d at 572.

Pursuant to the Fourth Amendment, an individual has a right to be free of excessive force when he is arrested or seized by the police. *Graham*, 490 U.S. 394-95. "[T]his inquiry turns on the objective reasonableness of the officer's conduct in view of the facts and circumstances facing the officer." *Lyons*, 417 F.3d at 575 (citing *Graham*, 490 U.S. at 397). "In making this evaluation, courts look at '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (citing *Graham*, 490 U.S. at 396). "Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.*

As Plaintiff pleaded *nolo contendere* to state charges of resisting and evading arrest, some force was necessary to arrest Plaintiff. Resisting arrest is a violation of Tenn. Code Ann. § 39-16-602, which provides in pertinent part:

> (a) It is an offense for a person to intentionally prevent or obstruct
> anyone known to the person to be a law enforcement officer, or
> anyone acting in a law enforcement officer's presence and at the
> officer's direction, from effecting a stop, frisk, halt, arrest or search
> of any person, including the defendant, by using force against the law
> enforcement officer or another.

In *Roberts v. Anderson*, 213 F. App'x 420, 421 (6th Cir. 2007), the plaintiff brought an

action under 42 U.S.C. § 1983, asserting, among other things, a claim for the excessive use of force. Plaintiff challenged the grant of summary judgment in favor of defendants arguing it was based upon a mistake of fact; namely, that he had pleaded guilty to aggravated assault when in fact he had pleaded guilty to resisting arrest under Tenn. Code Ann. § 39-16-602. *Id.* The Sixth Circuit affirmed the district court finding defendants were entitled to summary judgment on plaintiff's § 1983 claim of excessive force because:

> under Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest; thus, a guilty plea and resultant conviction of such a charge necessarily includes a finding that the officer did not use excessive force.

*Id.* at 427 (quoting *State v. Davis*, No. E2003-02214-CCA-R3-CD, 2004 WL 2583893, * 10 (Tenn. Crim. App. Nov. 15, 2004); Tenn. Code Ann. §§ 39-16-602 and 39-11-611(e)(1)-(2)).

In *Stone v. Watkins*, this Court held:

> Tennessee law does not include the element that the suspect must be free from pre-resistance excessive force. *See* Tenn. Code Ann. § 39-16-602(a). Instead, under Tennessee law, an officer's use of pre-resistance excessive force is a statutory defense to the crime of resisting arrest. Tenn. Code Ann. § 39-11-611(e); *State v. Tidwell*, No. 01C01-9807-CC-00288, 1999 WL 436840, at * 3 (Tenn.Crim.App. June 30, 1999) ( "The legality of the arrest is not relevant to the determination of whether the defendant committed the offense of resisting arrest, unless the defendant is claiming self defense against excessive force from officers.").

No. 1:04-CV-259, 2007 WL 1001847 * 4 (E.D. Tenn. Mar. 30, 2007) (footnotes omitted).

This Court has also noted that the decision in "*Roberts* . . . dealt only with allegedly excessive force either exerted *before* the suspect began to resist, or inextricably intertwined with the subject's resistance." *Cook v. McPherson*, No. 1:05-cv-136, 2007 WL 1004606, * 5 (E.D. Tenn. Mar. 30, 2007). Pre-arrest/subdual excessive force is a statutory defense to the offense of resisting

arrest under Tenn. Code Ann. § 39-11-611(e) (2007), which states in pertinent part:

> (e) The threat or use of force against another is not justified: . . .

> (3) To resist a halt at a roadblock, arrest, search, or stop and frisk that the person using force knows is being made by a law enforcement officer, unless:

> (A) The law enforcement officer uses or attempts to use greater force than necessary to make the arrest, search, stop and frisk, or halt; and

> (B) The person reasonably believes that the force is immediately necessary to protect against the law enforcement officer's use or attempted use of greater force than necessary.

Thus, the plain, unambiguous language of Tenn. Code Ann. § 39-11-611(e) deals only with the amount of force used to make the arrest, not any force used after an individual has been arrested/subdued. This is also reflected in the Comments by the Tennessee Sentencing Commission to § 39-11-611(e), which state:

> Subsection (e) represents a policy decision by the commission that the street is not the proper forum for determining the legality of an arrest. To a large extent, the rule is designed to protect citizens from being harmed by law enforcement officers. Research has shown that citizens who resist arrest frequently are injured by trained officers who use their skills and weapons to protect themselves and effectuate the arrest. If the defendant knows it is a law enforcement officer who has stopped or arrested him or her, respect for the rule of law requires the defendant to submit to apparent authority. The justification is restored if the law enforcement officer uses greater force than necessary under the circumstances and the defendant acts under reasonable belief that his or her acts are necessary for self-protection.

In his affidavit, Plaintiff states he was told to put his hands on his head and to get up against the car, he was jerked around and thrown to the pavement by Walker, his arm was jerked behind him and he was handcuffed [Doc. No. 47-2, lines 8-13]. Plaintiff claims Allman then jumped on him, placed him in a headlock, and punched him in the face [*id.*]. Plaintiff further claims that while both

of his hands were cuffed, he was sprayed by Allman, and received injuries to his head, face and hands [*id.*].  When viewed in the light most favorable to Plaintiff, and in the absence of any evidence presented by Defendants in connection with their motion, it appears that after Plaintiff was handcuffed, the officers continued to use force against Plaintiff, including placing him in a headlock punching him, and spraying him with a chemical weapon.  Thus, the facts as alleged by Plaintiff and viewed in the light most favorable to him, if true, constitute a violation of his Fourth Amendment right to be free from excessive force.

Plaintiff's affidavit does not bifurcate his allegations of excessive force into pre-subdual/arrest and post-subdual/arrest claims.  Based upon Plaintiff's *nolo contendere* plea to charges of resisting and evading arrest, Plaintiff has admitted that he did evade and resist the efforts of Allman, Jorgenson, and Walker.  On the current record, however, the Court is unable to determine the nature of Plaintiff's resistance or when it began and/or ended in relation to the sequence of events set forth in his affidavit.  The Court cannot determine that there is no question of fact regarding post-subdual/arrest excessive force when viewing the evidence in the light most favorable to Plaintiff.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  At the time of the events in question, the law was clearly established in the Sixth Circuit that there was a "right to be free from excessive force . . . ." *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001).  Prior to the incident, the Sixth Circuit consistently found that force applied once a suspect has been arrested/subdued may be unreasonable. *See Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) ("There was simply no governmental interest in continuing

to beat [the plaintiff] after he had been neutralized, nor could a reasonable officer have thought there was"), *cert. denied*, 537 U.S. 1104 (2003); *Cox v. Treadway*, 75 F.3d 230, 234 (6th Cir. 1996) ("[I]t is unreasonable and thus a violation of the Fourth Amendment for a police officer, acting under color of law, to use physical force on a citizen who has been arrested and restrained, who is securely under the control of the police. . . ."), *cert. denied*, 519 U.S. 821 (1996).  *See also McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) ("our court has repeatedly found that a totally gratuitous blow with a policeman's nightstick may cross the constitutional line."); *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994) (If the jury determines the police officer "gratuitously maced" a person who had been arrested and incapacitated, "as a legal matter no reasonable officer would believe that such conduct would not violate plaintiff's constitutional rights.").

Based upon the clearly-established law, a reasonable police officer would have been aware that placing a non-resisting, handcuffed person in a headlock and beating him with fists and/or spraying him with a chemical weapon would violate the clearly established constitutional right to be free from excessive force.  If the facts are as asserted by Plaintiff, then the Defendants are not immune.  Therefore, Plaintiff has satisfied his burden of establishing that Allman, Jorgenson, and Walker are not entitled to qualified immunity on his claims of excessive force at this stage of the litigation.

Accordingly, that aspect of Defendants' motion which seeks a summary judgment on Plaintiff's § 1983 claims of excessive force against Allman, Jorgenson, and Walker on the basis of qualified immunity will be **DENIED**.

### C.     The *Heck* Doctrine

The next issue before the Court is whether Plaintiff's § 1983 claim of excessive force against

Allman, Jorgenson, and Walker is barred under the *Heck* doctrine as the result of his plea of *nolo contendere*. Defendants assert that under *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005), a decision based upon the *Heck* doctrine, Plaintiff is barred from pursuing his excessive force claim in this Court because any success in this action would necessarily imply the invalidity of his prior state convictions [Doc. No. 43-2 at 3].[2] Plaintiff argues the *Heck* doctrine is not a bar to his claims because his case involves a plea of *nolo contendere* and such a plea is not admissible under the rules of evidence [Doc. No. 55].

It is well established that *Heck*, "acts as a bar to certain claims under § 1983." *Cook*, 2007 WL 1004606 at * 3. In *Heck*, the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm cause by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not

---

[2] The plaintiff in *Cummings* was convicted in state court of two felony counts of assaulting a police officer. *Cummings*, 418 F.3d at 680. He also brought a § 1983 action asserting claims of unreasonable seizure and excessive force arising out of the same incident. *Id.* at 679. On appeal, the Sixth Circuit upheld the district court's dismissal of Cummings' excessive force claims under the *Heck* doctrine. *Id.* at 682-83. The Sixth Circuit stated that:

> The struggle between Cummings and the officers gave rise to both Cummings' assault conviction and the excessive force claim, and the two are inextricably intertwined. Additionally, Cummings could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge. Thus, we hold that *Heck* bars Cummings' excessive force claim from moving forward, and we affirm the district court's grant of summary judgment . . . on this claim.

*Id.*

cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed,FN7 in the absence of some other bar to the suit.

*Id.* at 486-87 (emphasis in original).

Under Tennessee law, "a plea of *nolo contendere*, on which there has been a judgment on conviction is treated the same as a judgment on conviction on a guilty plea." *State v. Davenport*, No. C.C.A. 88-19-III, 1988 WL 119320, * 4 (Tenn. Crim. App. Nov. 10, 1988). In addition, "[a]n accepted plea of *nolo contendere* becomes no less than an implied confession of guilt. For all purposes of the case only, a plea of *nolo contendere* is equivalent to a plea of guilty and satisfies the public interest as to the final determination of the issue of guilt." *Id.* "A plea of *nolo contendere* admits every essential element of the offense, . . . and it is tantamount to an admission of guilt for purposes of the case in which the plea is entered." *State v. Sullivan*, No. W1999-00941-CCA-R3-CD, 2000 WL 1664285, * 1 (Tenn. Crim. App. Oct. 23, 2000) (quoting *Teague v. State*, 772 S.W.2d 932, 943 (Tenn. Crim. App. 1988)).

The issue of whether a § 1983 claim of excessive force is barred based upon a plea of *nolo contendere* to charges of resisting arrest and evading arrest arising out of the same incident was recently addressed by this Court in *Stone*, 2007 WL 1001847 * 4. As held in *Stone*, under Tennessee law the offense of resisting arrest:

does not include the element that the suspect must be free from pre-resistance excessive force. *See* Tenn. Code Ann. § 39-16-602(a). Instead, under Tennessee law, an officer's use of pre-resistance

excessive force is a statutory defense to the crime of resisting arrest. Tenn. Code Ann. § 39-11-611(e).

*Id.* (footnotes and case citations omitted). Noting that the plaintiff in *Stone* "pleaded *nolo contendere* to resisting arrest in the underlying criminal case," the Court held:

> In determining the applicability of *Heck* in a § 1983 case, a *nolo contendere* plea in prior state criminal proceedings has the effect of a guilty plea. *See, e.g., Shelton v. City of Taylor*, 92 F. App'x 178, 183 (6th Cir. 2004); *Nicholson v. City of Westlake*, 20 F. App'x 400, 402 (6th Cir. 2001); *Dayton v. Kabot*, No. 4:05-CV-75, 2005 WL 2248355, at * 1 (W.D. Mich. Sept. 14, 2005) . . . .

*Stone*, 2007 WL 1001847, * 5. The Court held because the plaintiff "in effect, pleaded guilty to resisting arrest, and a judgment was entered accordingly, the Court must accept that [p]laintiff did resist arrest." *Id.* (citing *Wilson v. Johnson*, No. 3:04-CV-59, 2005 WL 2417057, * 8-9 & n. 6 (E.D. Tenn. Sep. 30, 2005)).

Under the applicable precedent, *Heck* does not bar the Plaintiff's § 1983 claims to the extent they are based on alleged excessive force applied subsequent to his resistance. *Id.*; *see also Cook*, 2007 WL 1004606 at * 3-5; *Potvin v. City of Westland Police Dep't*, No. 05-CV-70291, 2006 WL 3247116, * 9 (E.D. Mich. Nov. 7, 2006)). In addition, for the reasons that follow, *Heck* does not bar any of Plaintiff's § 1983 claims because he received judicial diversion.

The Court initially ordered the parties to supplement their pleadings to address *Powers*[3] in anticipation the Court would be informed of the sentence received by Plaintiff with respect to his plea, information not previously provided to the Court in the summary judgment pleadings. In

---

[3] In *Powers*, the Sixth Circuit rejected the contention that plaintiff's § 1983 action was barred by the holding in *Heck* because of Powers' extremely short incarceration, which left him with no recourse to challenge his conviction and sentence in a *habeas corpus* proceeding. 2007 WL 2428315.

response, the parties provided an order of judicial diversion and waiver of appeal form entered in the underlying criminal action. Based on these difficult to read documents, it appears Plaintiff was sentenced to four months probation and ordered to pay certain court costs [Doc. Nos. 51-2, 51-3 & 52-3].

Under Tenn. Code Ann. § 40-35-313(a)(1)(A),

> The court may defer further proceedings against a qualified defendant and place the defendant on probation upon such reasonable conditions as it may require without entering a judgment of guilty and with the consent of the qualified defendant. The deferral shall be for a period of time not less than the period of the maximum sentence for the misdemeanor with which the person is charged . . . .

In Tennessee, "[t]he purpose of judicial diversion is to avoid placing the stigma and collateral consequences of a criminal conviction on the defendant, in addition to providing the defendant a means to be restored fully to useful and productive citizenship." *State v. Johnson*, 980 S.W.2d 410, 413 (Tenn. Crim. App. 1998). "A defendant seeking judicial diversion stands before the court having already been found guilty -- ready to be sentenced." *Id.* (quoting *State v. Porter*, 885 S.W.2d 93, 95 (Tenn. Crim. App. 1994)). As held in *Johnson*:

> in a general sense, a "conviction" has been defined as the "result of a criminal trial (or guilty plea) which ends in a judgment or sentence that the accused is guilty as charged." Technically, a conviction involves not only a verdict, but also a sentence passed by the court. Since the trial court did not enter an order of conviction, but ordered the defendant to judicial diversion, the trial court was entitled to set reasonable conditions of probation including the payment of fines.

*Id.* (internal citations omitted).

Under Tenn. Code Ann. § 40-35-313(b), Plaintiff is eligible to have the conviction expunged from his record. However, under Tennessee law "[e]ven if the conviction has been expunged, expunction "returns the person to the position 'occupied before such arrest or indictment or

information'" not to "the position occupied prior to committing the offense." *State v. Kelley*, 34 S.W.3d 471, 481 (Tenn. Crim App. 2000) (quoting *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999)). Even once expunction has been ordered, the criminal acts for which a defendant received diversion can be considered for certain things such as prior bad acts in subsequent criminal proceedings or as a sentencing enhancement in subsequent criminal proceedings. *Id.*

Based upon Tennessee law, however, because Plaintiff was granted judicial diversion, a criminal judgment for resisting and evading arrest has not been entered by the state criminal court. Rather, Plaintiff has been found "guilty" of resisting and evading arrest based upon his plea of *nolo contendere* to those charges, but no criminal judgment was entered on that finding of guilt. No evidence as to whether Plaintiff complied with the terms of his judicial diversion appears in the record. There is also no evidence that a criminal judgment was ever entered on Plaintiff's plea of *nolo contendere*.

Based on the current record, the Court finds Plaintiff's plea of *nolo contendere* with judicial diversion does not constitute an outstanding criminal judgment for purposes of the application of *Heck*. Although not addressing the same issue addressed here, the Supreme Court recently recognized the *Heck* doctrine must involve a criminal conviction or sentence. *Wallace v. Kato*, ___ U.S. ___, 127 S. Ct. 1091, 1097-98 (2007) ("the *Heck* rule for deferred accrual is called into play only when there exists 'a conviction or sentence that has not been . . . invalidated,' that is to say, an 'outstanding criminal judgment.'"). Hence, *Heck* is not a bar to Plaintiff's § 1983 claim of excessive

force on the current record.[4]

Accordingly, that aspect of Defendants' motion which seeks a summary judgment on Plaintiff's § 1983 claims of excessive force against Allman, Jorgenson, and Walker based upon the *Heck* doctrine will be **DENIED**.

### D.     Collateral Estoppel/Issue Preclusion[5]

The final issue for consideration on the Plaintiff's remaining § 1983 claim for excessive force is issue preclusion.  Defendants assert that in the event the Court determines the *Heck* doctrine does not bar Plaintiff's claim of excessive force, then the Court should find the doctrine of collateral estoppel prevents Plaintiff from relitigating the factual issues of whether he fought with the officers and whether the force they used against him was necessary under the circumstances [Doc. No. 43-2 at 4].  Defendants assert that having chosen to plead *nolo contendere* to charges of resisting arrest, Plaintiff "should not now be able to argue that even if he did use force against the officers, he was a victim of excessive force – where such testimony could have been presented to the criminal court jury but was not." [*Id.* at 4-5].  Inexplicably, Plaintiff failed to address the issue of issue preclusion

---

[4] In his reply, Plaintiff asks to "continue the matter until January 2008, to give the Plaintiff the opportunity to accomplish the expungement . . . ."  [Doc. No. 55 at 3].  Even if this was considered a proper motion for a continuance, which it is not, Plaintiff has failed to indicate any good cause for his apparent lack of diligence and failure to have taken appropriate steps for expungement to date.  In addition, given the Court's decision that *Heck* is not a bar, Plaintiff has failed to provide a valid and good reason to continue the trial date.  This is especially true given the trial date has been continued several times at the parties' request.  The extension is also unnecessary because under Fed. R. Evid. 410 a plea of *nolo contendere* is not admissible against a defendant who made the plea, *Doherty v. American Motors Corp.*, 728 F.2d 334, 337 (6th Cir. 1984), whether or not expungement is obtained.

[5] While the parties use the term "collateral estoppel" under Tennessee law, the Sixth Circuit has repeatedly indicated the preferred term in federal courts is "issue preclusion."  *See e.g., DLX, Inc. v. Kentucky*, 381 F.3d 511 (6th Cir. 2004).  The terms will be used interchangeably herein given the parties' extensive use of the term "collateral estoppel."

in his response to the summary judgment motion.

This Court looks to Tennessee law on the issue of issue preclusion to determine the preclusive effect that should be accorded to the Plaintiff's prior conviction for resisting and evading arrest based upon his plea of *nolo contendere*. *Tate v. Wenger*, No. 1:04-CV-379, 2006 WL 1582422, * 9 (E.D.Tenn. June 6. 2006) (citing *Haring v. Prosise*, 462 U.S. 306, 314-15 (1983); *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999)). "Under Tennessee law, once an issue has been determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation, even when the claims or causes of action are different." *Id.* (citing *Gibson v. Tant*, 58 S.W.3d 103, 113 (Tenn. 2001).

The party which seeks to invoke collateral estoppel bears the burden of proof on that issue. *Beaty v. McGraw*, 15 S.W.3d 819, 824 (Tenn. Ct. App. 1998). To satisfy their burden of proof in invoking the doctrine of collateral estoppel with regard to Plaintiff's claims of excessive force, Defendants must show:

> (1) the issue to be precluded is identical to the issue decided in the earlier suit; (2) the issue to be precluded was actually litigated and decided on its merits in the earlier suit; (3) the judgment in the earlier suit has become final; (4) the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue to be precluded.

*Tate*, 2006 WL 1582422, * 9 (citing *McGraw*, 15 S.W.3d at 824-25). Defendants have failed to meet all of the required elements because the issue presented here is not identical to the issue presented in the state court. By his plea, Plaintiff admitted in the state court proceedings that he intentionally prevented or obstructed officers from arresting him, but he did not admit the officers

used a reasonable amount of force against him after he ceased his resistence.

Viewed in the light most favorable to Plaintiff, his affidavit states that after he was handcuffed, he was placed in a head-lock, punched, and sprayed with a chemical substance [Doc. No. 47-2 at 1-2]. Plaintiff's version of events does not preclude the possibility that a reasonable juror could find that Defendants used excessive force against Plaintiff after he was subdued/arrested. As noted above, the Court is unable to determine as a matter of undisputed fact that all of the allegedly excessive force was applied prior to Plaintiff's resistance or was inextricably intertwined with his resistance. Thus, Defendants have not satisfied their burden of showing there is no genuine issue of material fact.

Accordingly, that aspect of Defendants' motion which seeks a summary judgment on Plaintiff's § 1983 claims of excessive force against Allman, Jorgenson, and Walker based upon collateral estoppel (issue preclusion) will be **DENIED**.

### E.    McMinn County

Plaintiff's complaint alleges "the Plaintiff was subjected to abuse that is consistent with an institutionalized practice of . . . Frisbee and McMinn County . . . which abuse was known to and ratified by it (sic);" that "Frisbee and McMinn County . . . had prior notice of the propensities of . . . Walker, Jorgenson and Allman and took no action to stop such abuses;" and that "Frisbee and McMinn County . . . failed to properly train . . . Walker, Jorgenson and Allman which failure led to the injuries and damages sustained by the Plaintiff." [Doc. No. 1 at ¶¶ 17-19].

In its motion, McMinn County asserts Plaintiff cannot establish liability as to McMinn County because Plaintiff cannot establish there was either an underlying constitutional violation or a custom or policy of McMinn County involving a failure to train that proximately caused the

alleged constitutional violation [Doc. No. 43-2 at 11].  McMinn County asserts "[b]ased upon the *Heck* doctrine and collateral estoppel . . . [Plaintiff] cannot create a jury question as to whether he was subjected to excessive force." *Id.* at 13.  In the alternative, McMinn County asserts "even if [Plaintiff] could create a jury question to whether he was subjected to excessive force," he has no evidence that a custom or policy of [McMinn] County regarding the training of its officers proximately caused the alleged constitutional violation. [Plaintiff] has offered only a mere allegation with regard to the training/policy issue and cannot rely on that mere allegation alone." *Id.*

In response, Plaintiff argues McMinn County is not entitled to summary judgment because his affidavit "shows a lack of training on the part of the officers and their supervisors and the readiness of the officers to engage in violent behavior toward the citizens and be backed up by fellow officers with no justifications and allowed to continue perpetrating as evidenced by Sergeant Walkers' failure to intervene or protect the Plaintiff, but even more egregious to participate and perpetuate the violence against Plaintiff." [*Id.* at 5].

McMinn County's first ground for summary judgment, that it is entitled to a summary judgment on Plaintiff's § 1983 claims of excessive force under *Watkins v. City of Battle Creek*, fails because neither the *Heck* doctrine nor issue preclusion apply to Plaintiff's excessive force claim for the reasons set forth above.  273 F.3d 682, 687 (6th Cir. 2001) ("[i]f no constitutional violation by the individual defendants is established, the [local government] cannot be held liable under § 1983.").  McMinn County's prevails, however, on its second ground, that it is entitled to a summary judgment because Plaintiff has presented only *allegations* against it, because Plaintiff has presented no *evidence* of an institutionalized practice, custom or policy concerning excessive force or evidence of inadequate training resulting from deliberate indifference that proximately caused the alleged

excessive force.

A local governmental entity, such as McMinn County, cannot be held vicariously liable under § 1983 for the acts of its employees. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003). Liability under § 1983 attaches only where the constitutional violation is the result of the "execution of a government's policy or custom." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000). To establish a § 1983 claim against the local government entity, the plaintiff must: (1) identify the conduct properly attributable to the local governmental entity and (2) "demonstrate that, through its *deliberate* conduct the [local governmental entity] was the 'moving force' behind the injury alleged." *Bd. of County Comm'r of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997). *Monell* allows the imposition of liability upon a local government not only when the challenged conduct relates to a formally implemented and adopted written policy, but also when the challenged conduct constitutes a "custom" or "usage" which is not memorialized, but is so permanent and well settled that it has the force of law. *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495, 507-08 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691).

A local government may be held liable under § 1983 based on inadequate training, "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The Sixth Circuit has held inadequate police training may amount to deliberate indifference where: (1) there are foreseeable consequences that could result from the lack of training or (2) there is a failure to act in response to repeated complaints of constitutional violations by officers employed by the local governmental entity. *Cherrington*, 344 F.3d at 646.

Plaintiff has presented no evidence that a custom, policy, or inadequate and indifferent training proximately caused the alleged constitutional violation at issue.[6] Plaintiff's affidavit states "[t]he defendants used excessive force against me" [Doc. 47-2 at 2, ¶ 16], but it does not present evidence of a custom, policy or training. Plaintiff failed to present any evidence McMinn County has a formal written policy condoning or encouraging the use of excessive force. Plaintiff failed to present any evidence indicating the necessity of a trial for resolving a material, factual dispute with respect to any custom of McMinn County. Likewise, Plaintiff has not responded to McMinn County's motion for summary judgment with any evidence from which a jury could find McMinn County's training program is inadequate.

A plaintiff seeking to hold a governmental entity liable for the execution of a policy or custom "has the burden of proof for establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue." *Bennett v. City of Eastpointe*, 410 F.3d 810, 819 (6th Cir. 2005) (citing *King v. City of Eastpointe*, 86 F. App'x 790, 801 (6th Cir. 2003). Because McMinn County does not bear the burden of proof on the issue of *Monell* liability, it need only point out the lack of evidence in the record concerning the issue of liability under *Monell*, it "ha[s] no obligation to support its motion for summary judgment with *any* affidavits." *Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1071 (6th Cir. 1993), *cert. denied*, 510 U.S. 1193 (1994)) (emphasis in original). The Sixth Circuit has stated:

> Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[6] In his affidavit in support of his first motion for a summary judgment, Sheriff Frisbee stated in pertinent part that "[t]o my knowledge, deputies Greg Walker, Benji Jorgenson, and J.P. Allman are fully trained and POST certified." [Doc. No. 25 at 1, ¶ 4].

(1986). The party moving for summary judgment need not support its motion with evidence negating the opponent's claim, but the moving party must affirmatively show the lack of evidence in the record. *Id.* at 323, 330. Once the moving party does this, the non-moving party, having the burden of persuasion on an essential element at trial, must come forward with evidence that demonstrates the existence of a genuine issue for trial. *Id.* at 324, 332. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

*Schenk v. Rubbermaid, Inc.*, No. 90-3180, 1990 WL 200313, * 1 (6th Cir. Dec. 12, 1990).

In *Griffin v. City of New York*, 287 F. Supp. 2d 392, 394-95 (S.D.N.Y. 2003), the district court granted summary judgment for defendants on the plaintiff's claims against the City of New York under *Monell*. Defendants sought summary judgment on the plaintiffs' claims "pointing out the plaintiffs would bear the burden of proof on this issue at trial, contend[ing] that they are entitled to summary judgment dismissing as to the City because the plaintiffs have no admissible evidence that the events of November 3, 2002 . . . took place according to a municipal custom or policy." *Id.* at 395. Noting that the plaintiffs had produced "no admissible evidence whatever" in support of their claims against the City, the district court granted summary judgment for the City, stating:

Plaintiffs have had ample opportunity to explore the facts pertinent to their *Monell* claim. In this situation, therefore, their failure to come forward with even a scrap of admissible evidence to support their contention that the alleged misconduct of the officers was attributable to the City under *Monell* and its progeny is dispositive.

*Id.* at 396.

The same result is reached here. McMinn County satisfied its burden by asserting there was no evidence in the record to support Plaintiff's claim the alleged misconduct of Allman, Jorgenson,

and Walker on January 4, 2004 was attributable to McMinn County under *Monell*.  In fact, Plaintiff did not argue McMinn County had not met its burden.  Instead, Plaintiff relied upon his affidavit, essentially arguing the facts of what happened to him showed a lack of training and a readiness to participate and perpetuate violence.  Plaintiff's affidavit discusses only the incident of January 4, 2004.  However, "[p]roof of a single, isolated incident of misconduct by a 'nonpolicymaking' employee is not sufficient to impose liability under *Monell* unless training or supervision was "so reckless or grossly negligent" that misconduct was 'almost inevitable' or 'substantially certain to result.'" *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 200 (6th Cir.1987) (citing *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833, (1982)).  Plaintiff has adduced no evidence from which the Court could find the training of Allman, Jorgenson or Walker was inadequate, much less that it was so inadequate, *i.e.*, recklessly or grossly negligent, that misconduct on the part of the law enforcement officers was inevitable.

Additionally, Plaintiff refers in his complaint to Allman, Jorgenson and Walker as deputy sheriffs, agents and employees of McMinn County [Doc. No. 1 at 2, ¶¶ 6-8].  In his motion for summary judgment, Plaintiff also refers to Walker as a sergeant [Doc. No. 47 at 5]. The issue of whether a given individual is a "policymaker" for purposes of imposing § 1983 liability is determined under state law.  *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).  Under certain circumstances a deputy sheriff in Tennessee can be a policymaker.  *Cagle v. Headley*, 148 F. App'x 442, 446 (6th Cir. 2005).  Such a finding is fact driven and depends upon the duties actually performed by the deputy sheriff in the particular county in which he is employed.  *Id.* Plaintiff, however, has presented no evidence Walker, Jorgenson or Allman is a "policymaker" for McMinn County and no evidence as to the actual duties performed by any of them.

29

Plaintiff, as the non-moving party, simply failed to present any significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute in support of his claims against McMinn County. *Celotex Corp.*, 477 U.S. at 323. Thus, McMinn County is entitled to a summary judgment on Plaintiff's claims concerning under *Monell*.

Accordingly, that aspect of Defendants' motion which seeks a summary judgment on Plaintiff's claims against McMinn County will be **GRANTED**.

### F.    Official Capacity

Plaintiff has also sued Frisbee, Allman, Jorgenson, and Walker in their official capacities. The Supreme Court has held that so long as a government entity receives notice and the opportunity to respond, an official capacity suit is, in all respects except name, a suit against the governmental entity. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Where police officers are sued in their official capacity, a plaintiff must meet the standards of liability imposed in *Monell* in order to recover. *Collins v. City of Detroit*, 780 F.2d 583, 584 (6th Cir. 1986). As noted above, Plaintiff cannot meet the standards of liability imposed in *Monell* against McMinn County.

In its prior order granting Frisbee partial summary judgment, the Court did not dismiss Plaintiff's claim that the actions of Allman, Jorgenson, and Walker were the result of an institutionalized practice known to and ratified by Frisbee and McMinn County because Frisbee failed to address this claim in his first motion [Doc. No. 33 at 10-11]. "A supervisory official can be liable under § 1983 for formulating or tolerating unconstitutional policies." *Loy v. Sexton*, 132 F. App'x 624, 628 (6th Cir. 2005). As Plaintiff cannot show McMinn County had an institutionalized practice, custom or policy, Frisbee cannot be held liable in a supervisory capacity under § 1983 for formulating or tolerating an unconstitutional policy regarding the use of excessive

force. *See Mills v. City of Barbourville*, 389 F.3d 568, 580 (6th Cir. 2004).[7] Accordingly, Frisbee is now entitled to a summary judgment on Plaintiff's claim he should be held liable under § 1983 for formulating or tolerating an unconstitutional policy or custom.

Accordingly, the individual Defendants will be **GRANTED** summary judgment on Plaintiff's claims against them in their official capacities.[8]

### G. Defendants' Motion to File Response Out of Time

As noted above, Defendants filed a motion seeking to late file their supplement [Doc. No. 49]. As Defendants have established they experienced technological difficulties causing the supplement to be filed late and as Plaintiff has not objected to the late filing, Defendants' motion to file the supplement late will be **GRANTED**.

### V. Conclusion

For the reasons set forth above, Defendants' motion to file their supplement late [Doc. No. 49] is **GRANTED** and Defendants' motion for a summary judgment [Doc. No. 43] is **GRANTED**

---

[7] In addressing Frisbee's first motion for summary judgment, this Court held Plaintiff did not allege Frisbee encouraged the specific misconduct which allegedly occurred on January 4, 2004 and also held Frisbee's uncontradicted affidavit [Doc. No. 25 at ¶ 2] showed Frisbee had no role and no personal knowledge of the events at issue [Doc. No. 33 at 8]. Generally, in order to establish supervisory liability under § 1983, a plaintiff must prove the defendant supervisor, is personally responsible for the alleged actions that resulted in his injury. *Mills*, 389 F.3d at 580 (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Plaintiff failed to present any evidence that Frisbee, as a supervisor, was personally responsible for the alleged unconstitutional actions on January 4, 2004. In addition, McMinn County has now prevailed on Plaintiff's claims under *Monell*, so Plaintiff also cannot show there was a unconstitutional policy, custom or usage, which Frisbee personally encouraged Allman, Jorgenson and Walker to follow.

[8] Plaintiff has asserted pendent state law claims of battery, false arrest, malicious prosecution, and unlawful seizure against Frisbee, Walker, Jorgenson and Allman [Doc. No. 1 at 4, ¶ 20]. The Court previously granted summary judgment to Frisbee on the state law claims under Tenn. Code Ann. § 8-8-301 [Doc. No. 33 at 6]. Defendants have not sought summary judgment on these claims; therefore, they will not be addressed herein.

**IN PART** and **DENIED IN PART** as follows:

(1) that aspect of the Defendants' motion which seeks summary judgment on Plaintiff's § 1983 claims of unconstitutional seizure (false arrest) is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE**;

(2) that aspect of Defendants' motion which seeks summary judgment on Plaintiff's § 1983 claims of excessive force is **DENIED** and those claims will proceed to trial; and

(3) that aspect of Defendant's motion which seeks summary judgment on Plaintiff's claims against McMinn County and the individual Defendants in their official capacities, including the remaining claim against Frisbee, is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE**.

SO ORDERED.

ENTER:


s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE